Good morning. May it please the Court, Monty Cobb for the petitioners, and I would like to reserve about five minutes for rebuttal. You have a nice voice, but lift it up a little bit. I'll do that, Your Honor. Let me see if I can aim that a little bit. Is that better? That's fine. All right. As you've probably noticed from our briefs, our primary issue here is discovery, and it's fair to say that the remaining issues that we've raised on this appeal are mainly in the event of remand. Those were issues that we thought might be of concern. Let me ask you what the discovery issues relate to as far as the substantive issues. I know it relates to the statute of limitations. Correct. What else? The equitable estoppel argument that we made below and also to the theft law. What will you get out of the equitable estoppel argument? That would enable the individuals to whom these partnership taxes pass through to deduct the theft loss in the year in which. What you want is to deduct the theft losses now for the prior years. Is that what you want? We want to deduct them in each tax year in which the theft. The statute of limitations, but the statute says you have to deduct those in the year in which the theft loss occurred. And I know of no way you can get around that statute by an equitable estoppel. Well, I must admit that it's not a theory that has been established well in the law. However, the principle of equitable estoppel has been established. It just hasn't been applied to this particular section of the Internal Revenue Code. But it has been applied against the government. And our contention would be if the evidence supports it, which we would have to obtain through the discovery we're seeking, our contention would be that if the IRS knew that Mr. Hoyt was stealing money from these partnerships in the tax years at issue and actively concealed that fact, then we believe equitable estoppel would bar the IRS from enforcing Section 165E, which is the year of discovery rule. Well, I don't know how you could – that's a problem to me, but then – How about relative to the penalties? Well, the penalties are – the penalties and interest are our primary concern here. If these things are deductible in the year in which the theft occurred, then of course the penalties and interest are either minimized or eliminated. And that's exactly what we're trying to accomplish with that theory. But the law now is that they're deductible only in the year of discovery, right? That's right, under 165E. Now, the other question I wanted to ask is if you had discovery relating to the extension of the period of limitations, how would that work? What advantage would it be to you? All right. Our primary theory for invalidating the extensions of the statute of limitations is based on Transpac, which is a case that's cited in the respondent's brief. And we argued that below, but it isn't a primary issue on this appeal. The Transpac court said that where serious conflicts exist, a tax matters partner may be barred from acting on behalf of the partnership. And then the Transpac court made a number of comments about what is required, and each of those things require discovery. For example, did the service have a strong interest in capitalizing on a possible conflict of interest by keeping the tax matters partner in place? And remember that Mr. Hoyt was – Mr. Hoyt obviously had this long-running swindle going on. And to get him to cooperate, they want him to turn things over. I mean, he was investigated forever, and there were kind of starts and stops and starts and stops. And obviously, probably – I don't know that all of the people that invested were innocent. There might be some people – I think the district court it was cited said these people are all innocent and all of that. Well, I don't know whether that's true or not. But obviously, Mr. Hoyt doesn't want his house of cards to fall. So his interest is – you've made an argument that his interest is different than the people that he's representing. So if that being the case, what can you gain from discovery? How is that going to facilitate your defense of the case? Well, the tax court didn't believe that we had shown that the IRS knew of these disabling conflicts or tried to take advantage of them, which is what TransPAC requires. The only way we can know if the IRS knew of the disabling conflicts and tried to take advantage of them or made any sweetheart deals with Hoyt is to – Okay, but if you can prove it and assume that that evidence is relevant, what can you do then? If we can establish that we've satisfied the criteria under TransPAC, then we eliminate the extensions of the statute of limitations for a number of the tax years, and it would bar the taxpayers from having to pay those taxes at all, including the penalties, interest, and the primary tax. In other words, what you're saying is if they don't get a statute – if the government doesn't get the statute of limitations extended, then they can't collect whatever they're claiming because they're barred by their own statute of limitations. In certain tax years, yes. It doesn't apply to all the years at issue in these cases. Isn't it true that even though there was a conflict of interest, with all of this great fraud, if I can use it that way, all of these matters, this guy Hoyt was really the only person who knew what was going on, then you'd really have to show that the government used him in such a way that it prejudiced your clients. Exactly, Your Honor. Right? Yes. And if you can't show that, you can't win. That's right, and that's why we need discovery of the central audit files to know what the IRS knew and how they were dealing with Hoyt during these years beginning back in 1986. Didn't you get enough discovery so that the merits, that there was no prejudice, was decided properly? No, Your Honor. There's no way that we could satisfy the Transpac criteria without knowing what was going on inside the IRS during this audit process. Well, tell me what discovery you have so far, just in a very brief summary, what more you want. All right, what we were given in the way of audit files were what the IRS called the audit files on each of these particular sheet partnerships for the particular tax years. It's a little folder. It's about an eighth of an inch thick. It has a couple of forms in it. That's it. None of the audit teams' communications with each other or about Hoyt or to Hoyt even or to Hoyt's attorneys, none of that. So you're hoping to find from that information that would inform why Hoyt granted extensions? Exactly. And what was the IRS's motive for seeking the extensions? Now, obviously, I hate to be Machiavellian, but you always have to think what attorneys want and what advocates want. So I can see why you want the discovery, but why isn't it just a bargaining chip for you to, I mean, make the IRS deal with you? Well, in litigation, I guess everything is a bargaining chip that any side acquires. But that's simply incidental. What we really want to do here, and I've said this on the record, it's in the record. All right. In the record in these cases is my statement several times that we really just need to be able to evaluate these cases and evaluate the merits of our theories and advise our clients. We cannot in good conscience tell our clients this is a terrible theory and we should drop it when we haven't seen the evidence that would allow us or not allow us to pursue the case. So right now you essentially have to rely on the IRS that there was no disabling conflict. That was their conclusion, correct? Right. And you have to rely on that. And if there was a disabling conflict, you're saying that that would then put you in another posture where you could knock out certain tax liabilities. How much? It would be millions, the exact amount I couldn't tell you off the top of my head. But we're talking about, in this case, nine partnerships and I think four tax years. So that's 36 partnerships for tax, you know, for those tax years. And there are approximately 30 investors in each partnership, so each of which has hundreds of thousands of dollars of tax liability. How much? Hundreds of thousands each, including the interest and penalties. All right. Let me put this to you. Suppose we should say, okay, you can have discovery on the statute of limitations issue, and the government goes to the district judge and says, listen, for us to reproduce these documents would cost $100,000. Would your clients be able to raise that kind of money and pay the expense of the government to go through all those old records that cost money? Our experience is that when we have been allowed discovery, we've been invited to come down and look at the original documents and select what we want reproduced and limit the cost that way, and that's what we would do. Yes, we could afford to do that. It's not, Mr. Cobb, it's less than crystal clear, but a similar issue was raised in the Phillips case, right? In terms of Transpac. Right. Yes. And in terms of the conflict of interest of the tax marriage partners. Exactly. Phillips has this statement that the partnerships for which Hoyt was being investigated have not been shown to be the partnerships involved in this case, which seems to say that, well, if you're going to look for some kind of conflict of interest, you have to find it in the very case that's under consideration by the service. And you have the files for these partnerships. In other words, it seems Phillips seems to say that's all you're entitled to. Well, I think what. Although I admit it's less than clear. Well, Phillips was a very underdeveloped record, and there are a number of other cases cited by the respondent of individual Hoyt investors who have tried on their own to accomplish something, as opposed to this group effort that I represent. They have not been able to mount the resources to develop the record as we have to appeal on this level to garner what evidence there is from other sources, such as from the U.S. trustee's office and from various other places. So the records in those cases are very poor, very, very limited. And they don't tell the story of what's going on in this entire audit. Now, with regard to your specific question, Phillips found that the petitioner there had failed to produce evidence that his partnership was one of the ones being investigated. We can show that all of these partnerships were under investigation. In our case, which was tried here in the tax court back in 2001, we had testimony from the CID investigator who conducted the investigation. This pertained, his investigation pertained to the entire Hoyt operation, and now we have evidence that will let us get around that holding in Phillips. I have a question to ask you. The question that I have is the tax court decided that the theft came from the individuals and not the partnership. Suppose we decided, and I'm inclined to feel that way right now, by the way, that the theft was from the partnership, that the individuals sent their money into the partnership, and the answer to the partnership was the partnership money, and therefore whatever happened to it was a partnership loss. But what difference does that make in your case if, in fact, you can't take those theft losses? It doesn't make any difference, does it? No. If we can't establish our equitable estoppel theory to take the theft losses in those years, then it doesn't make a difference. However, the tax lawyers who represent the individual investors tell me that even if only at the end of the process, in 1997 or 1998 when these thefts were discovered, even if they can take it then, it's better for the investors somehow, and I don't understand it, frankly. It's better for them if it's a business loss rather than an individual loss. Okay. That's what I wanted to know. Did you want to reserve five minutes? I do, Your Honor. All right. Thank you. Thank you. May it please the Court, I'm Anthony Sheehan, and I represent the Commissioner of Internal Revenue. We've had extensive discussion about discovery in this case, and I think it's important, first of all, to focus on the standard of this Court when evaluating discovery arguments on appeal. The appellant must show actual and substantial prejudice, in other words, a reasonable probability that the outcome would be different had discovery been allowed. Well, on the issue of the conflict in terms of, you know, I'm just stating this, you know, probably in the strongest terms for the appellant so that you can respond to it. So, I mean, essentially the appellant is taking the position, you ascertained that there wasn't a conflict, that you could continue to deal with Mr. Hoyt and he could continue to function in his representative capacity. And the appellant is essentially saying they are in a position without discovery that they have to rely on your determination in the sense of, you know, sort of like if you trust me, we're the government, we're here to help, and that they have to rely on your interpretation. And they're saying if they were able to establish that he did have this disabling conflict, they would then the extension shouldn't have been granted, and then they would not be liable for a lot of the taxes that they're presently liable for. Why do they have to rely on your determination when there's a lot of things out there? I mean, that's saying we have to be sure that you're right. Well, let's take a look at the various proposed conflicts, one of which would be the criminal investigations of Hoyt by the IRS, of which there were four. We know the dates of those already. We also know the dates of the extensions. All of the extensions except for one were executed at a time when there was no criminal investigation of Hoyt going on. The only exception was executed on. But if he hadn't granted the extensions, what would have happened then? Wouldn't there have been an audit right then? Well, the audit was going on already. I know, but wouldn't it have happened right then? If he had not granted them, presumably the IRS would have issued FPAWS right then and there. All right. To get them out there ahead of the extension. Come again. There's no extension. What is the practice of the IRS at that point? As a general rule, if no extension is granted, the case will be, they will prepare the notice of deficiency or the notice of Yeah, they'll stock them with taxes, what you're saying. They'll just take everything and say there's a deficiency of taxes of $8 million or whatever. Isn't that true? Yes. I mean, if it's about to expire, the issuance of the right notices will toll the statute. So we have to get those out. And the usual practice would be to close the case right then and there and get the FPAWS or, in this case, a partnership case out. But wouldn't Mr. Hoyt have a motivation to not have that happen because that's going to further disclose the swindle, as it were, or whatever that's been ongoing? Wouldn't his motivation at that point be different than the other partners? It would give the partners more information about what he was doing. I don't think so under the facts of this case, Your Honor, because FPAWS have been issued all along. These partnerships, the first audit years were back in the 1970s, and there have been FPAWS coming out all along. These extensions, I believe, were executed in the 90s for tax years starting, I guess, this case involves 84 through 86. So there are lots of FPAWS already. There had already been a lot of litigation involving the partnerships. And if I'm not mistaken, I should check the dates, the IRS had probably already started freezing partners' refunds, saying we're not going to give you refunds for these Hoyt deductions because they're no good. Well, I guess if there's, you know, I mean, you can say that you're not going to give anything that you don't have to give, but just given that there could be something in there and there could be a difference of opinion as to whether there was a disabling conflict, then, you know, what's the danger? If there's nothing in there, what's the danger of turning it over? Good question. That's a good question, and we've got to go back to that. It's something for the trial judge to decide in the pretrial discovery hearings. Here we've got to look at the record and say, does this make a difference? Or if there were confidential things in there, what would prevent the trial judge from you requesting certain in-camera review, you know, in that situation for someone other than, I mean, obviously there's an interest for the IRS to defend its position that there was not a disabling conflict, all right? And obviously he has an interest to show that there was. And presumably, you know, the judge would be able to look at that, and if the judge looked at all of it and said there's no evidence here, you don't get it, you know, then they've taken care of satisfying, you know, that they have pursued that defense as far as they can go, and you haven't disclosed anything confidential. If there is something there, it seems that they certainly should have it. Well, certainly if there's a remand, we would invoke every privilege we had to. We would also take whatever steps we need to, because there's already been one wrongful disclosure suit in this case, and there's also been a massive Bivens suit in this case brought by Hoyt Partners, and we would want to make sure that all the I's are dotted and T's are crossed so that there would be no phishing expedition through the IRS's records for further causes of action. But again, I think given the massive amount of documents, you have to look at what's going on. The criminal investigations I've covered. Well, I guess then what he's put forth in terms of what he says, you know, if there was a disabling conflict and the extension shouldn't have been granted and therefore they wouldn't have been liable, why wouldn't it be relevant to look at that, to look as far as they can into that issue? Tell me why. Well, all I can say, Your Honor, is that a lot of the alleged conflicts don't matter. It's a matter of law. This Court has held in Phillips and probably reinforced by Adams that the IRS, not the IRS's job to police any internal conflicts of interest. And all I can say is that despite extensive litigation, Durham Farms, the first River City Ranches case, Abiline, Adams, all of the individual partner cases, there's never been a document that's uncovered that has shown that the IRS is somehow manipulating the situation to... Well, and they may very well not be, but how can you know unless someone looks? I mean, that's... All I can say is that it has not come up yet. If the Court feels that more discovery is needed for that limited purpose, then certainly it's within the power of this Court to remand for that purpose. Well, is there anything in the record right now that shows that the granting of extension to Hoyt actually benefited Hoyt's position and actually benefited, as against the challenges of the government, benefited the members of the partnership, partnerships? Is there anything like that on the record? Not specifically. I mean, usually it gives more time to work things out, try to figure out a resolution for the case. But I don't see... Is there any indication that in the dealings between the government and Hoyt, there was any special effort to pass tax liabilities on to the partnerships rather than Hoyt? Or you don't know? Well, in answer to your first question, I don't think there's any evidence one way or the other that anybody benefited from it. In answer to the second question, the closest I think we would come to it would be there was a settlement in May 1993 of tax years 80 through 86 of the cattle partnerships. The goal of the settlement was to reduce the cattle ships to demonstrable economic reality in line with the tax court's opinion with bails and with the IRS's count and valuation of the cattle. Now, that had the coincidental effect of decreasing deductions because there were phantom cows out there. Right. I understand that. And it had the... In that case, the government went out and commonly cattled and they weren't there. It did have the coincidental effect of reducing some of the income going up because there weren't as many phantom cows being passed up through share crop agreements. But that settlement and the underlying documentation of the IRS's explanations of it are all in the record, and I believe in our supplemental excerpts of record. And you could read those, and there was nothing nefarious going on there. Does an extension give the IRS more time to investigate and get more cooperation from someone in that sense? I mean, obviously, like you said, if you don't have the extension, then you issue the deficiency and that's out. If you want to still keep looking and you hope that someone's going to keep giving and you can get them in a cooperative stance, isn't there some advantage to the extension so that you have more time before you have to do that? Yes, there is. It does give more time for investigation, more time for looking, more time for analysis. I don't know if it necessarily gives us the ability to... I mean, this guy wasn't that easy to catch. No, he wasn't. I mean, despite what appears to be a huge swindle, it took a long time. It did take a long time. Certainly, again, extensions work to the government's benefit. It gives us more time. It might also work to the taxpayer's benefit in that you might be able to work out and settle an issue rather than go through litigation. I can't say in this case, though, that the extensions really helped one side or the other all that much. They're probably more in line of what this court described in Phillips as routine accommodations rather than anything unique or special. Well, now, on how you characterize the theft, whether it was, you know, from the individuals or from the partnership, what is the advantage if it was from the partnership for the appellants? Well, the advantage for the appellants in this case if it was from the partnership, and assuming we can get around this year of discovery issue, would be that they could prove up and try to take the deductions right now in this TEFRA partnership proceeding and then pass them down to the individuals through the normal TEFRA process. On the other hand, under the government's theory, each individual partner would have to come in and would have to show that the year of discovery was still open, at which point there have been several settlements with individual partners where they have been allowed to take the theft loss deduction on their individual returns, and that's consistent with the theory we are advancing here in this appeal. Let me ask a couple of questions, one which hasn't been discussed. One of the issues deals with where the principal place of business of the partnerships were, and I think it was within Oregon? By stipulation, and the government rejected that for some other states. Isn't that right? The government stipulated, the tax court rejected it. The tax court rejected it. The tax court, what state did the tax court allow it to apply? The tax court said that these partnerships were organized mostly under California law, with the exception, I think, of one or two were under Nevada law, so it applied the partnership law of California and Nevada. Well, would that make any difference? It seems to me the question then resolved into did Hoyt steal from each individual, or did he steal from the partnership? And it doesn't seem to me the partnership law would make any difference anywhere. As we brief the case, no, I don't think it makes any difference to our theories of the case, which state you put them in. Well, let me state it a different way. If the court had accepted the stipulation, since that was, would it have required the court to apply any different law by necessarily accepting that stipulation? I don't think it would have come out any differently whatsoever. The stipulation was also limited in time, right? It just said, you know, at X point in time, that's the place. Is that what the stipulation said? I don't recall the exact terms of the stipulation. Let me get back to the discovery issue now. If you lose on the discovery issue, then the entire judgment has to be vacated, right? And the whole case reopened. Is that right? No, I think the discovery issue can be segmented. Well, what would be the purpose of taking discovery if the judgment's not vacated? Well, for example, the judgment could be affirmed regarding the theft losses because the theft is from the individuals, not the partnerships, and because of the equitable estoppel. Equitable estoppel is a matter of law, cannot be used to overcome Congress's express intent in the statute. When we get to the conflict of interest matters, which would be the statute of limitations matters, we're talking about ten tax years of five partnerships. I couldn't tell you off the top of my head exactly which ones they are. I could get back to the court if you need to know that. But we could. We've got separate decision documents entered for each each of these cases. There are what, 62 different cases here. We could find out which ones would be affected and order discovery. If you follow Mr. Cobb's theory, you know, right down to the logical end. And one, he gets discovery on these issues. Discovery shows that, you know, the IRS is hiding the ball. And so the tax matters partner is laboring under a disabling conflict. So four, he had no authority to grant these extensions. So the statute of limitations is run. So all these assessments are no good, right? Is that the ultimate conclusion that he wants to reach? That would be the ultimate conclusion. But, again, we're dealing with, I believe, 62 individual partnership tax years. In 52 of them, the FPAWs were issued timely by the IRS. There was no extension and no need for an extension. The statute of limitations issue applies to ten tax years of five partnerships out of the 62 total. And certainly we could get back to the court with exactly which partnerships they are out of the 62. So, you know, a lot would just depend on the scope. But I think, you know, if you look at it, the thefts were from the individuals, not from the partnerships in the mere fact that the money passed through these conduit entities. Let me get back to this about the theft being from the individual and not from the partnerships. But that's a finding of the tax court. Is that what it is? That is. Yes, it is. And it's based upon what? It's based upon.  It has been a contested issue. Essentially what happened is that the partnerships in their trial brief said that advance to theory, which could be read as Hoyt stole from the partnerships as entities, or a theft from each individual partner can be aggregated into a theft from the partnership. The tax court read it the second way, applied the state law, and said no. On appeal, the partnerships have now abandoned their second theory or said they never really argued that. And have said no, Hoyt stole from the partnerships as entities. But if you look at it as a matter of law, he was convicted of stealing from individuals. He was never charged with stealing from the partnerships. Restitution was ordered to be made to the individuals. The partnerships have never complained about that or said no, no, don't pay these people, pay us instead. But they're not bound by the criminal judgment. They mean the taxpayers. The partnerships mean, your honor. I mean, the partnerships. Right. And even. But the fact still remains that mainly what the tax court relied on is the, you know, the criminal. What happened in the criminal case? Well, I think, yes, the tax court did rely on that. You can also look at the facts of these cases. These are well-established facts have been established by several cases. River City One, Durham Farms. This case, we know how Hoyt ran his partnerships. We know what was going on here, that he controlled everything. That these were not individuals coming together to form partnerships. They were recruited by Hoyt, placed in partnerships. Hoyt moved people around at will. That was one of the basis of the Abiline wrongful disclosure case. So the evidence that supports that finding by the court is basically that the criminal case found that the thefts were from individuals? That's one piece of evidence, yes. That was what he was convicted of. He was convicted of stealing from individuals.  And also, as a matter of law, both in this court and the Supreme Court, you look at the tax court. But since that's a different posture, I mean, essentially the criminal and what the tax court is doing, would the tax court have necessarily had to find that? Or is that just evidence that the tax court, I mean, as a matter of law, would the court have to find it was from individuals? Well, the issue here in this Tefra partnership case is whether the partnerships at the partnership level are entitled to claim theft losses because Hoyt stole from these partnership entities. But even if it were stealing from the partnership, if you're right on the statute and that there's no equitable arrangement that can allow them now to take the theft loss, it really doesn't make any difference, does it? That is correct. Okay. So we don't have any. If we follow your position, then under the tax law, you have to claim the theft loss in the year in which it occurred. No, year of discovery. It doesn't make any difference. Year of discovery. Pardon? Claim it in the year of discovery. Yeah, year of discovery. I'm sorry. Right. This case involves tax years 84 through 96. The partnerships admitted, and this is an admission by the other side. The theft was not discovered until 1998, maybe as early as 97, certainly after the years at issue. And if they can't get around that, then it doesn't matter ultimately who was the victim of the theft because nobody can claim the theft loss deductions. It doesn't matter for this case. It doesn't matter for this case. It doesn't matter for this case, no. I see my time is up. And if there are no further questions. Thank you, counsel. Thank you. I think I might best spend my time by addressing how the discovery would work on remand because of the concern about, I think the phrase was used, a fishing expedition for other causes of action. And the standard remedies for that that exist in all cases are available to the tax court, protective order, no disclosure beyond counsel and necessary experts, and in-camera inspections of anything that's claimed to be privileged. All of those things can take care of any such problems. And I should also point out that neither I nor the group I represent have filed any lawsuits against the IRS. What individual partners do, we can't control. But what can be controlled is the dissemination of the evidence that the IRS is concerned about. Well, I don't think we can concern ourselves about it if there are other lawsuits. I agree. But on the, I think Judge Tashima's question had to do with if this panel were to, assume for a moment, say that additional discovery, that you are entitled to additional discovery, does that require vacating the judgment and then for the lower court to determine after the discovery, if there's any effect, what it affects? Because obviously, say the court could look at it and say there's nothing there, and so you can't show any more than you showed before, so there isn't a disabling conflict, and end of story. I believe the entire judgment has to be vacated because what we're talking about. But what about Mr. Sheehan's point that there are some issues that aren't affected by further discovery? That, you know, we could, well, he thinks we should affirm, but, you know, could be decided. I just don't agree with his position. All issues could be affected by discovery unless it can be said. Well, including the issue of, for instance, whether or not theft losses are deductible, you know, in the year of loss even though it's discovered much later. If it can be said as a matter of law that on no set of facts, any set of facts, imaginable or not, because we just don't know what they are, if it can be said as a matter of law that that relief isn't available, then certainly discovery that's relevant only to those issues would not be appropriate. But I don't believe that can be said here until we know what the facts are and know what the evidence might be. I have a feeling, to be truthful, that discovery is going to limit, shrink this case, not expand it. Well, we can't worry about that either. I know. I mean, those are all little carrots you're throwing to us, but we can't worry about that. We just have to decide what's here. Right. And I think that I don't see any way to what you're granting if you grant discovery is discovery as of the time it was requested, which was way before all of these theories were refined and worked out and tried. All right. If the court doesn't have any further questions, I have no further questions. I think we're questioned out. All right. Thank you. This matter will stand submitted. Now, I said this at this point. This panel will recess and reconvene with a second panel for the matter of Nutt v. Knowles.
judges: Bright , Tashima, Callahan